**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| SHEILA VOUSOGHIAN,<br>on behalf of Plaintiff and all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFE PROTECT 24/7, INC.,<br>and JOHN DOES 1-10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 2:20cv382 |

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiff Sheila Vousoghian brings this action against Defendants Life Protect 24/7, Inc. and John Does 1-10 to stop Defendants' practice of making phone calls to cellular telephones using an automated telephone dialing system, pre-recorded or artificial voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and to obtain redress for all persons injured by its conduct.

**JURISDICTION AND VENUE**

2. This Court has federal question subject matter jurisdiction under 28 U.S.C. §§ 1337 (commerce) and 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

3. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant Life Protect 24/7, Inc. is located in and does business in this District.

## PARTIES

4. Plaintiff Sheila Vousoghian is an individual who resides in Fairfax County, Virginia.

5. Defendant Life Protect 24/7, Inc. is a Virginia corporation. Its registered agent and address is Mark E. Slaughter, 440 Monticello Avenue #2200, Norfolk, Virginia 23510.

6. Defendants John Does 1-10 are other persons responsible for the calls complained of.

## THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227

7. Congress enacted the TCPA in 1991 in response to a growing number of consumer complaints regarding telemarketing robocalls.

8. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243 (Dec. 20, 1991); *see also Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9. Consumer complaints about this conduct have only increased since then. "If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015). "Robocalls" are the #1 consumer complaint in America today.

10. The Federal Trade Commission (FTC) and Federal Communications Commission (FCC) regularly cite "unwanted and illegal robocalls" as their number-one complaint category. The FTC received more than 1.9 million complaints filed in the first

five months of 2017 and about 5.3 million in 2016. The FCC has stated that it gets more than 200,000 complaints about unwanted telemarketing calls each year. These complaints are on top of the complaints each state AG's office receives and also does not include the millions of unreported calls.

11. In an effort to curb these unwanted calls, the TCPA regulates, *inter alia*, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls to any cellular telephone number. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

12. In 2012, the FCC prohibited "any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). This prior express written consent requirement became effective on October 16, 2013.

**FACTS RELATED TO PLAINTIFF VOUSOGHIAN**

13. Plaintiff Sheila Vousoghian is a non-subscriber customary and authorized user of cellular telephone number XXX-XXX-0869, included on her mother's account.

14. Plaintiff Sheila Vousoghian pays the cell phone bills for her cell phone usage.

15. The number is a residential number, used primarily for nonbusiness purposes.

16. Life Protect 24/7, Inc. or an agent(s) on their behalf, operates a call

center, where automated equipment is used to place large numbers of telemarketing calls. The equipment has the present capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

17. On January 23, 2020, Plaintiff Vousoghian received a pre-recorded voice call from 800-550-4863. Plaintiff answered the call. A robotic voice greeted Plaintiff and asked if anyone in the household is 50 or 55 years or older. The call was then disconnected.

18. On January 23, 2020, Plaintiff Vousoghian received a pre-recorded voice call from 800-950-5051. Plaintiff answered the call. A robotic voice greeted Plaintiff and asked if anyone in the household is 50 or 55 years or older. Plaintiff terminated the call.

19. Later on April 5, 2020, Plaintiff determined to figure out the party responsible for these calls called 800-550-4863 and was greeted with the same robotic message she had previously heard. She pressed 1 in response to the question of whether anyone in the household is over 50 or 55 years old and was told she was eligible to receive a free medical device. Plaintiff was then transferred to a live person named Octavia who identified herself as from Life Protect in Virginia and provided the website, www.lifeprotect247.com.

20. Plaintiff may have received other unsolicited, automated pre-recorded or artificial voice telemarketing calls placed by or on behalf of Life Protect 24/7, Inc.

21. Plaintiff has not consented to the receipt of any calls from Defendants.

22. Plaintiff has not provided her cell phone number to Defendants.

23. By calling Plaintiff, Defendants caused Plaintiff and the putative class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, consumption of electricity in cost per-

kilowatt required to recharge the cell phones, consumption of money or purchased blocks of calls, and wear and tear on telephone equipment. The calls took time to receive and Plaintiff's statutory right of privacy was invaded.

24. The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 (¶165) (2003).

25. Defendant Life Protect 24/7, Inc. is responsible for making or causing the making of unsolicited, automated pre-recorded or artificial voice telemarketing calls. On information and belief, the purpose of the calls is to solicit persons to buy Defendants' medical alert monitoring system and service.

26. Defendant Life Protect, 24/7, Inc. as the entity whose products or services were advertised, derived economic benefit from the phone calls.

27. On information and belief, the unsolicited, automated pre-recorded or artificial voice telemarketing calls were made as part of a mass broadcasting of automated, unsolicited telemarketing phone calls.

28. On information and belief, Defendants have made unsolicited, automated pre-recorded or artificial voice telemarketing calls to cellular phones of numerous persons.

29. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited, automated pre-recorded or artificial voice telemarketing calls to avoid receiving them.

30. The TCPA was enacted to protect consumers from unsolicited phone calls

exactly like those alleged in this case.

31. The calls were made to consumers who never requested to receive them, never engaged in any interaction with Defendants and are made on a repeat basis without consent.

32. Defendants either negligently or willfully violated the rights of Plaintiff and other recipients in placing the calls or arranging for the calls to be made.

**APPLICABLE LAW – TCPA**

33. The TCPA provides at 47 U.S.C. § 227(b):

**§ 227. Restrictions on use of telephone equipment**

**. . . (b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–**

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

34. The TCPA, 47 U.S.C. § 227(b)(3) further provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

> **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

35. Defendants and/or their agents violated the TCPA by using equipment that placed automated pre-recorded or artificial voice calls to Plaintiff and other members of the putative class' cell phones.

36. Defendants made unsolicited automated pre-recorded or artificial voice telemarketing calls to cellular telephone numbers belonging to Plaintiff and other members of the class without their prior express consent.

37. By making unsolicited pre-recorded or artificial voice telemarketing calls to Plaintiff and the class members, using an automated dialing system and without prior express consent, Defendants violated 47 U.S.C. §227(b)(1)(A)(iii).

38. Plaintiff and the class members are entitled to statutory damages.

39. Plaintiff and the putative class members suffered actual damages in the form of monies paid to receive the unsolicited robocalls and her statutory right of privacy was invaded.

40. Defendants violated the TCPA even if their actions were only negligent.

41. Defendants should be enjoined from committing similar violations in the future.

**CLASS ALLEGATIONS**

42. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff Vousoghian brings suit on behalf of the following class consisting of: (a) all persons who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (b) received a telephone call made by or on behalf of Defendant Life Protect 24/7, Inc. (c) placed using an automated dialer, pre-recorded or artificial voice.

43. The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Plaintiff alleges on information and belief, that there are hundreds of class members. Class members can be identified through Defendants' and/or their agents' records.

44. Plaintiff's claims are typical of the claims of other members of the class, in that Plaintiff and the class members sustained damages arising out of Defendants' uniform wrongful conduct, including the making of unsolicited telephone calls.

45. Plaintiff will fairly and adequately represent and protect the interests of the class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

46. There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. These include:

a. Whether the equipment Defendants used to place the calls in question was an automatic telephone dialing system as defined by the TCPA;

b. Whether Defendants systematically made automated calls to persons without prior express consent to receive such telephone calls;

c. Whether Defendants systematically made telemarketing telephone calls to persons using a pre-recorded message or artificial voice;

d. Whether Defendants violated the TCPA;

e. Whether class members are entitled to damages, including treble damages based on the willfulness of Defendants' conduct.

47. Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

52. Management of this class action is likely to present significantly fewer difficulties than those presented in many class actions, e.g., for securities fraud,

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

a. Statutory damages, 47 U.S.C. § 227(b)(3);

b. Actual damages;

c. An injunction restraining the conduct complained of;

d. Costs of suit;

e. Such other or further relief as the Court deems just and proper.

TRIAL BY JURY IS DEMANDED.

/s / Christopher Colt North
Christopher Colt North

Christopher Colt North
VSB# 16955
The Consumer & Employee Rights Law Firm, P.C.
5629George Washington Memorial Highway, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com

*Pro Hac Vice To Be Submitted*
Daniel A. Edelman
Cathleen M. Combs
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200

*Attorneys for Plaintiff*

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

/s / Christopher Colt North
Christopher Colt North